# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| DENNIS LEE ECKERT, JR.,<br>    Petitioner, | Case No. 1:10-cv-674 |
| | Barrett, J. |
| vs. | Bowman, M.J. |
| WARDEN, MADISON<br>CORRECTIONAL INSTITUTION,[1]<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody who is currently incarcerated at the Madison Correctional Institution in London, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition, as well as respondent's return of writ and supplemental return of writ with exhibits. (Docs. 3, 11, 26).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On June 4, 2008, the Clermont County, Ohio, grand jury returned an indictment charging petitioner with one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2) and one count of theft in violation of Ohio Rev. Code § 2913.02(A)(1). (Doc. 11, Ex. 1).

On August 15, 2008, the parties filed an "Agreed Stipulation Of Facts," which provided as follows:

> On March 31, 2008, at approximately 10:24 a.m., the Defendant . . . walked into Huntington Bank located at 734 Ohio Pike, Clermont County, OH 45245. According to Huntington Bank Teller Julia M. Slone, the Defendant first walked

---

[1] In the original petition, petitioner properly named the Warden of Lebanon Correctional Institution (LeCI) as respondent, because petitioner was incarcerated at LeCI at that time. (*See* Doc. 3). On July 7, 2011, petitioner notified the Court that he was transferred from LeCI to Madison Correctional Institution (MCI), where he currently resides. (Doc. 20). Because LeCI's Warden no longer has custody of petitioner, the caption of this case is hereby changed to reflect that MCI's Warden, the individual who currently has custody of petitioner, is now the proper party respondent in this action. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

to the writing table, then proceeded to Ms. Slone's window. (*See* Witness Voluntary Statement, Julia Slone). Once there, Defendant presented a Traveler's Check and asked if the bank "cashed these." The Defendant then handed Ms. Slone the Traveler's Check, *Id.*

"This is a robbery" was written on the back of the Traveler's Check. *Id.* Ms. Slone then showed Jessica Hall, the teller next to her, the Traveler's Check with the note written on the back. *Id.* Ms. Slone then asked Ms. Hall what she should do. Ms. Hall read the note, pulled the bait chip, and then responded that Ms. Slone should "give him the money." (*See*, Witness Voluntary Statement, Jessica Hall). At this point, Ms. Slone gave the defendant back the check along with two bundles of $20 bills totaling $2,000. The Defendant then left and Ms. Hall went to the door and locked it.

The Union Township Police Department (UTPD) received the robbery alarm and responded to Huntington Bank. Once there, UTPD began processing the scene and interviewing witnesses. The witnesses were visibly upset by the incident and were crying when the officers arrived. The officers continued their investigation for the next two months.

On May 9, 2008, a tip was called into UTPD that identified Dennis Eckert as the individual who committed the acts previously stated. Sergeant Blankenship acquired a photograph of Dennis Eckert and compared it to the Huntington Bank surveillance photo. Both Sergeant Blankenship and Officer Bail agreed there was a clear match of the individual in both photos.

Sergeant Blankenship then made contact with Ryan Dixie on May 10, 2008. He allowed Ms. Dixie to view the surveillance photographs from Huntington Bank on his laptop computer. Ms. Dixie stated the individual looked like Mr. Eckert, but could not say it was him for sure.

On the same day, Sergeant Blankenship met with Ms. Slone and had her look through a photo lineup. Ms. Slone viewed the lineup and stated she was 100% sure that the man who handed her the note and left with the $2,000 was number five, which was Dennis Eckert.

On May 15, 2008, Dennis Eckert's father called and advised UTPD that the Defendant had turned himself in to the Clermont County jail. Officer Bail and Detective Combs responded to the jail to interview Mr. Eckert. Mr. Eckert was mirandized and signed a form stating he was willing to give a statement. Mr. Eckert then gave a full confession and advised his ex-girlfriend, Melissa Martinez, was the driver of the offense. Mr. Eckert stated Ms. Martinez threw away all of his clothes after the offense. Mr. Eckert further stated he was given $2,000.00 in twenty dollar bills.

The State concedes that Defendant neither verbally, nor by action, indicated that

he had a weapon other than what's indicated in the facts above. Further, the Defendant did not touch anyone while in the bank, and did not have consent to take the money. Finally, it is to be noted that Jessie Hall's statement discloses she was afraid he would pull a gun out; however, it is conceded by the state that the defendant neither displayed a weapon, [n]or indicated verbally or physically that he had a weapon or did not have a weapon.

(Doc. 11, Ex. 3).

Petitioner waived his right to a jury trial and elected to be tried by the court. (Doc. 11, Ex. 4 & Ex. 21, Tr. 5–6). Following a bench trial on August 15, 2008, where arguments supporting each party's position were lodged but no additional evidence was introduced, petitioner was found guilty as charged. (*See* Doc. 11, Ex. 6 & Ex. 21, Tr. 6-24). In an Entry filed September 30, 2008, petitioner was sentenced to concurrent terms of imprisonment consisting of a six-year prison term for the robbery offense and a twelve-month prison term for the theft offense. (Doc. 11, Ex. 7).

## State Direct Appeal

With the assistance of new counsel from the Clermont County Public Defender's Office, petitioner filed a timely appeal to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 11, Ex. 8). In his appellate brief, petitioner raised the following assignments of error:

> 1. The trial court erred in entering a finding of guilty to robbery as the evidence was legally insufficient to sustain such conviction.
>
> 2. The trial court erred in entering a finding of guilty to robbery because such verdict was against the manifest weight of the evidence.
>
> 3. The trial court erred in sentencing appellant on both the robbery and theft counts as they are allied offenses of similar import.

(Doc. 11, Ex. 9).

On July 6, 2009, the Ohio Court of Appeals issued an Opinion overruling the assignments of error challenging the sufficiency and weight of the evidence supporting

3

petitioner's robbery conviction, and sustaining the third assignment of error challenging petitioner's convictions and concurrent sentences for both robbery and theft. (Doc. 11, Ex. 11). The state appellate court vacated petitioner's multiple sentences on the ground that the robbery and theft offenses constituted allied offenses of similar import, which should have been merged, and remanded the case to the trial court "for the limited purpose of resentencing appellant in accordance with this decision." (Doc. 11, Ex. 11, p. 6).

## Resentencing

A resentencing hearing was held on September 8, 2009 in accordance with the Ohio Court of Appeals' direct appeal decision and remand order. (Doc. 26, Resentencing Tr.). At the hearing, which petitioner attended, the prosecutor stated: "This case is back on a re-sentencing from the Court of Appeals which affirmed the trial court's decision." (Doc. 26, Resentencing Tr. 4). On December 21, 2009, the trial court issued a Judgment Entry merging the robbery and theft offenses and imposing a six-year sentence for the robbery offense, as the court had ruled on the record at the September 8, 2009 hearing. (Doc. 11, Ex. 17; Doc. 26, Resentencing Tr. 4, 7).

It appears from the record that petitioner did not pursue an appeal in the state courts from the resentencing entry.

## State Post-Conviction Petition

On October 2, 2009, after the Ohio Court of Appeals issued its direct appeal decision and petitioner was resentenced at the hearing held on September 8, 2009 in accordance with the appellate court's remand order, petitioner filed a *pro se* petition for post-conviction relief with the trial court. (Doc. 11, Ex. 14). In the petition filed pursuant to Ohio Rev. Code § 2953.21, petitioner alleged that (1) his trial and appellate attorneys were ineffective; (2) his multiple punishments for "allied offenses of similar import" constituted a violation of the Fifth Amendment's Double Jeopardy Clause; (3) he was denied the effective assistance of counsel

4

because a "conflict of interest" was created when the attorney who represented him on direct appeal was replaced by another attorney at the Clermont County Public Defender's Office to represent him for resentencing purposes; (4) his constitutional rights were violated at sentencing because he was not provided an opportunity to read the presentence investigation report (PSI) or to discuss the PSI with his counsel before the sentence was imposed; and (5) his constitutional rights were violated because only one judge presided over his bench trial. (Doc. 11, Ex. 14).

On October 15, 2009, the Clermont County Common Pleas Court issued a Judgment Entry overruling the petition as untimely. (Doc. 11, Ex. 16). The trial court reasoned in pertinent part:

> . . . .As it applies to this case, R.C. 2953.21(A) requires that a motion for postconviction relief be filed no later than 180 days after the filing of transcripts in the direct appeal. . . . A defendant's failure to file a motion within the filing deadline deprives the Court of jurisdiction. . . .
>
> Here, the Defendant did not timely file his motion, and the Defendant does not claim that any of the exceptions in R.C. 2953.23 apply to the case. Therefore, the Court holds that it has no jurisdiction to consider the Defendant's motion.

(Doc. 11, Ex. 16).

Apparently, petitioner did not pursue an appeal in the state courts from the trial court's decision in the post-conviction matter. (*See* Doc. 11, Brief, p. 5 & Ex. 18).

### Motion For Delayed Appeal To The Ohio Supreme Court

On May 20, 2010, over ten months after the Ohio Court of Appeals issued its direct appeal decision on July 6, 2009, and five months after the Judgment Entry resentencing petitioner to a six-year prison term was filed on December 21, 2009, petitioner filed a *pro se* notice of appeal and motion for delayed appeal to the Ohio Supreme Court from the direct appeal decision. (Doc. 11, Ex. 12). Petitioner alleged as cause for his delay in filing that his appellate counsel "never . . . let [him] know that the Court of Appeals [ha]d rule[d] on his case, and . . .

5

never [sent him a copy of] the [appellate court's] Judgment Entry and Opinion." (Doc. 11, Ex. 12, p. 3). Petitioner also averred that he "waited for almost a year" before he filed a motion to compel and a copy of the direct appeal decision was sent to him. (Doc. 11, Ex. 12, p. 3). Petitioner contended that he was prevented from pursuing a timely appeal to the Ohio Supreme Court because neither his appellate counsel nor the intermediate appellate court would send him the judgment entry and opinion. (Doc. 11, Ex. 12, p. 3).

On July 21, 2010, the Ohio Supreme Court denied petitioner's motion for delayed appeal and dismissed the cause without opinion. (Doc. 11, Ex. 13).

### Federal Habeas Corpus

Petitioner filed the instant habeas corpus petition in September 2010. (*See* Doc. 3). He alleges as the sole ground for relief that "[t]he evidence was not sufficient to support a conviction for robbery." (Doc. 3, p. 5). On February 3, 2011, respondent filed a return of writ responding to the petition. In the return of writ, respondent contends in part that petitioner has waived his sole claim for relief, which was raised on direct appeal to the Ohio Court of Appeals, due to his procedural default in failing to pursue a timely appeal to the Ohio Supreme Court. (Doc. 11, Brief, pp. 6-11).

Thereafter, petitioner filed motions to amend the petition to add an ineffective assistance of appellate counsel claim as a second ground for relief and to stay the instant action so that he can exhaust the additional claim in the state courts. (Docs. 15-16). On September 7, 2011, the District Court adopted the undersigned's Report and Recommendation to deny those motions. (Docs. 17, 23).

On October 27, 2011, respondent filed a supplemental return of writ (Doc. 26), as ordered by the Court on June 23, 2011 (*see* Doc. 18), to address petitioner's argument that he was "prevented from filing a timely appeal to the state supreme court because his appellate

6

counsel did not inform him of the Ohio Court of Appeals' direct appeal decision and neither his counsel nor the court would provide him with a copy of the appellate court decision required to initiate an appeal to the Ohio Supreme Court until nearly a year later." (Doc. 18, pp. 2-3). This matter, therefore, now appears ripe for final disposition.

## II.  PETITIONER HAS WAIVED HIS SOLE CLAIM FOR RELIEF, WHICH HE PROCEDURALLY DEFAULTED BY FAILING T0 FILE A TIMELY APPEAL TO THE OHIO SUPREME COURT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim

7

and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural

bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[2] In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87

---

[2]In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

(1977).

In this case, petitioner procedurally defaulted the claim he has raised in the instant petition, which was presented on direct appeal to the Ohio Court of Appeals, by failing to perfect a timely appeal to the Ohio Supreme Court from the appellate court's decision overruling the assignment of error. Although petitioner did seek leave to file a delayed appeal with the state's highest court, the court refused to allow the appeal by summarily denying the motion. (*See* Doc. 11, Ex. 13).

The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see generally Harris,* 489 U.S. at 260-62. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). The court explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id*. A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id*. Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Bonilla,* 370 F.3d at 497.

As in *Bonilla*, petitioner failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he did not provide adequate reasons for his delay in filing. *See id.* In this case, as in

*Bonilla,* the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief." *Id.* In such circumstances, it must be assumed that the state supreme court enforced the applicable procedural bar to review. *Id.* (citing *Sparkman,* 94 F.3d at 203).

Because petitioner failed to comply with a state filing requirement, which was relied on by the Ohio Supreme Court in denying his motion for delayed appeal, the state's highest court was not provided with an opportunity to consider the merits of his sole ground for relief. Therefore, this Court's review of petitioner's claim is barred unless petitioner "can demonstrate cause for . . . and actual prejudice [from the default] or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Bonilla,* 370 F.3d at 497 (quoting *Coleman,* 501 U.S. at 750).

Petitioner has not argued, nor does the record demonstrate, that failure to consider his claim for relief will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. Although petitioner has challenged the weight and sufficiency of evidence supporting his robbery conviction, actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

Petitioner did argue as cause for his delay in seeking an appeal with the Ohio Supreme Court that his counsel on direct appeal failed to inform him of the Ohio Court of Appeals' direct appeal decision and that neither his appellate counsel nor the Ohio Court of Appeals would provide him with a copy of the appellate court judgment entry and opinion. (*See* Doc. 11, Ex.

12, p. 3). Petitioner stated that he "waited for almost a year before [he] . . . file[d] a motion to compel," and that only "then the judgment entry and opinion [were] sent to him." (Doc. 11, Ex. 12, p. 3).

Counsel's ineffectiveness may constitute cause for a procedural default occurring in an appeal as of right to the Ohio Court of Appeals. *See Murray,* 477 U.S. at 488-89. Attorney error amounting to ineffective assistance cannot constitute cause "where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal" to the state's highest court. *Tanner v. Jeffreys,* 516 F. Supp.2d 909, 916 (N.D. Ohio 2007) (quoting *Barkley v. Konteh,* 240 F. Supp.2d 708, 714 (N.D. Ohio 2002), in turn citing *Coleman,* 501 U.S. at 751-53); *see also Wilson v. Hurley,* 382 F. App'x 471, 478 (6th Cir.) (and cases cited therein), *cert. denied,* 131 S.Ct. 576 (2010).[3] However, by the same token, the Sixth Circuit has held that the constitutional right to effective assistance of counsel during a direct appeal as of right does "not terminate the moment the court of appeals hands down its decision," but extends to include the duty of informing one's client of the outcome of the proceeding. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 433-35 (6th Cir. 2006).

Respondent has filed a supplemental return of writ responding to petitioner's "cause" argument. (Doc. 26). Respondent has submitted evidence indicating that petitioner must have known when he was resentenced on September 8, 2009 that the Ohio Court of Appeals had issued a decision affirming his convictions, while remanding the matter solely for the purpose of

---

[3]*Cf. Garrett v. Moore,* No. C-1-05-102, 2007 WL 315093, at *1, *5 (S.D. Ohio Jan. 30, 2007) (Weber, J.; Hogan, M.J.) (holding that because the right to effective assistance of counsel does not extend beyond the first appeal as of right to a discretionary appeal, petitioner was unable to establish that the ineffectiveness of his counsel, who represented him on discretionary appeal to the Ohio Supreme Court, in failing to assert all the claims of error that had been raised to the Ohio Court of Appeals, constituted cause for his procedural default); *Whittsette v. Gansheimer,* No. 1:08cv245, 2008 WL 4682656, at *3-4, *9-11 (N.D. Ohio Oct. 22, 2008) (same); *Wright v. Bobby,* No. 1:05cv02870, 2008 WL 2484170, at *1, *17-18 (N.D. Ohio June 17, 2008) (same).

merging the robbery and theft charges on resentencing as "allied offenses of similar import." (*See* Doc. 26, Resentencing Tr. 4). Respondent has also filed additional exhibits to demonstrate that, contrary to petitioner's contention, petitioner had notice of the Ohio Court of Appeals' decision by September 2009 and "actually had the state court's opinion as of October 2009." (Doc. 26, Brief, pp. 6-7). Specifically, respondent has provided the Court with a copy of the prison's "Legal Mail Log," which shows that petitioner received "legal mail" on September 21, 2009 from the Clermont County Public Defender's Office. (Doc. 26, Ex. 25). In addition, respondent has submitted a copy of a letter, addressed and mailed to petitioner on October 6, 2009, from Robert F. Benintendi of the Clermont County Public Defender's Office; the letter provided in pertinent part: "Enclosed please find a **second** copy of the decision of the Twelfth District Court of Appeals. . . . Unfortunately, as you can see, the appellate court affirmed the decision of the trial court." (Doc. 26, Ex. 26) (emphasis in original).[4] Finally, respondent has submitted a copy of petitioner's motion to compel the production of the direct appeal decision, which was filed with the Ohio Court of Appeals on November 5, 2009, as well as a copy of the appellate court's entry filed November 13, 2009, denying the motion to compel as follows: "The present case was decided on July 6, 2009. A copy of this court's opinion and decision were mailed to appellant's counsel, the Clermont County Public Defender, on that date." (Doc. 26, Exs. 23-24).

It is clear from the record that, at the latest, petitioner knew of the result of his appeal by the time he was resentenced in September 2009, and that he actually received at least one copy

---

[4] The letter also informed petitioner that he had "45 days from the date of the appellate court's decision in which to appeal the decision to the Ohio Supreme Court;" that the state supreme court "does not have to take the appeal and you must essentially be granted permission to file a merit brief;" that "[i]t has been my experience that it is difficult, though not impossible, to gain permission" to be heard on appeal by the Ohio Supreme Court; and that "[o]ur office will not handle the appeal any farther, but should you wish to try to get to the Ohio Supreme Court please contact the Ohio Public Defender's Office." (Doc. 26, Ex. 26).

13

of the appellate court's direct appeal decision by October 2009. Petitioner did not file his notice of appeal and motion for leave to file a delayed appeal with the Ohio Supreme Court until seven to eight months later, on May 20, 2010. (*See* Doc. 11, Ex. 12). He has provided no explanation for his extensive delay in pursuing the delayed appeal remedy after obtaining the requisite information by September or October 2009.

In *Smith*, 463 F.3d at 435, the Sixth Circuit held that "if the period of time between when the defendant learned of the [appellate court] decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal–here, forty-five days–the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for [appellate] counsel's failure to notify the defendant of the decision." (Emphasis in original). Here, even accepting petitioner's conclusory assertion that he was not informed of or provided with the appellate court decision in a timely fashion, he did not take any action to appeal that decision until at least seven months thereafter, well beyond the forty-five day limit permitted under Rule II, § 2(A)(1)(a), of the Rules of Practice of the Supreme Court of Ohio. Therefore, as in *Smith*, petitioner has not demonstrated "prejudice as a result of his counsel's failure to notify him of the Ohio Court of Appeals' decision . . ., and thus he cannot rely on his counsel's ineffective assistance to overcome the procedural default of his . . . claims." *Id.* at 436; *cf. Gau v. Kelly,* No. 4:09cv2955, 2011 WL 400141, at *6 (N.D. Ohio Feb. 4, 2011).

Accordingly, in sum, the Court concludes that petitioner procedurally defaulted the claim asserted as the sole ground for relief in this federal habeas action by failing to file a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' direct appeal decision overruling the assignment of error. The claim is waived in the absence of a showing of cause for petitioner's procedural default or that a fundamental miscarriage of justice will occur if the defaulted claim

14

for relief is not considered herein. Therefore, the petition is barred from review by this Court and is subject to dismissal with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the sole ground for relief alleged in the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[5]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

        *s/Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

---

[5] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the defaulted ground for relief. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| DENNIS LEE ECKERT, JR.,<br>    Petitioner | Case No. 1:10-cv-674 |
| vs | Barrett, J.<br>Bowman, M.J. |
| WARDEN, MADISON<br>CORRECTIONAL INSTITUTION,<br>    Respondent | |

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc